IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK ANTHONY CLARK,              : | |
|     Plaintiff,                              : | |
|                                                   : | |
| v.                                                  : | CIVIL ACTION NO. 19-CV-2531 |
|                                                   : | |
| JOHN DOE-HERNANDEZ, *et al.*,  : | |
|     Defendants.                         : | |

**MEMORANDUM**

**SCHMEHL, J.  /s/ JLS**                                                           **July 1, 2020**

       Plaintiff Mark Anthony Clark brings this *pro se* civil action pursuant to 42 U.S.C. § 1983, based on events that allegedly occurred while he was incarcerated as a pretrial detainee at the Chester County Prison.[1]  Clark named the following Defendants: (1) Correctional Officer Hernandez; (2) Correctional Officer Taylor; (3) Correctional Officer White; (4) Lieutenant Mastnjak; (5) Nurse Ashley Harrington; (6) Nurse Practitioner Martha Champlin; (7) Corporal Lanes; (8) Nurse John Doe; (9) "Prime Care Health Department"; (10) Warden Edward McFadden; and (11) Chester County Prison.  By previous Memorandum, the Court granted Clark leave to proceed *in forma pauperis*, dismissed certain of his claims, and allowed other claims to proceed, and permitted Clark to amend his Complaint. On July 26, 2019, Plaintiff filed an Amended Complaint against the same Defendants with the exception of Nurse John Doe, "Prime Care Health Department," Warden Edward McFadden and Chester County Prison. Presently before the Court is the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim of Defendant Correctional Officers Hernandez, Taylor, White, Lieutenant Mastnjak and

---

[1] Clark is currently incarcerated at SCI Frackville.

Corporal Lanes ("Correctional Officer Defendants") and a similar motion filed by Defendants Harrington and Champlin. ("Nurse Defendants"). For the reasons that follow, the Correctional Officer Defendant's motion to dismiss is denied and the Nurse Defendants' motion to dismiss is granted.

**I.   FACTS**

Clark asserts excessive force claims based on events that allegedly occurred on May 15, 2018, while he was apparently being taken to the restricted housing unit following an incident on his block.[2] He alleges that "[a] code was called and [he] was restrained and placed in handcuffs." (Am. Compl. p.1.)[3] Clark alleges that he was forced off Q-block and made to walk backwards down the corridor toward the Restrictive Housing Unit. Defendants Lanes and Taylor held Clark's arms in the air behind his head, which forced him to lean forward as he was being required to walk backwards. Defendants Hernandez, Mastnjak and White were present as well. While Clark was walking backwards, being pulled by his pants, his sneakers and socks came off.

At some point, the Correctional Officers forced Clark to the ground. Clark alleges that he felt pressure to his right eye and his vision became blurred. Defendant Hernandez then allegedly punched Clark in the face multiple times. Clark alleges he yelled out several times, "Stop punching me!" (*Id.*) Clark alleges that he was then forced into a cell where Hernandez continued to punch him. According to Clark, someone yelled out, "Why he keeps hitting him like that?" (*Id.*) Hernandez and the other officers slammed Clark to the floor, pulled him to his feet, and slammed him into a wall. Blood began continuously leaking down the side of Clark's face. Clark's arms were again raised above his head and Hernandez punched him in the face again.

---

[2] Clark does not describe the incident that led to his extraction from the unit.
[3] The Court adopts the pagination assigned to the Complaint by the CM-ECF docketing system.

2

Clark was left in the cell. He describes a situation where his arms were grinding against the door because the cuffs were stuck in the slot of the door, which caused pain to his arms. He called out that he could not feel his shoulders and was pushed forward, collapsing onto the floor.

Moments later, Clark heard Nurse Harrington ask whether he could sit up so she could clean his arms. Clark replied that he could not sit up because his head was spinning, to which Nurse Harrington replied, "your head is always spinning." (*Id*. at p. 2.) Harrington asked him to sit up again and he again replied that he could not because he felt dizzy and his hands were cuffed and tethered behind his back. Clark alleges that Lieutenant Mastnjak said, "go get the paperwork so we can sign it as a refusal." Someone opened the door, removed Clark's handcuffs, and left him bleeding on the cell floor. He claims he sustained permanent scarring and skin disfigurement.

**STANDARD OF REVIEW**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice. *Id.* As Clark is proceeding *pro se*, the Court construes his allegations liberally. *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

**II.     DISCUSSION**

Clark brings excessive force claims against all five Correctional Officer Defendants. A pretrial detainee claiming a Fourteenth Amendment violation must establish that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). To state a due process violation based on excessive force, a detainee must allege facts to plausibly suggest that

"that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.*

Taking Clark's allegations as true, as the Court is obligated to do at this stage of the litigation, Clark will be permitted to proceed on his excessive force claims against Defendants Hernandez, Taylor, White, Mastnjak, and Lanes, based on the events of May 15, 2018. Discovery may ultimately reveal that some or all of the officers' actions were justified, but for now Plaintiff has raised a plausible claim of excessive force.

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.[4] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

---

[4] As Clark was a pretrial detainee at the time of the events in question, the Fourteenth Amendment governs his claims. *See Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). However, the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis. *See Parkell v. Morgan*, 682 F. App'x 155, 159 (3d Cir. 2017) (per curiam); *see also Moore v. Luffey*, No. 18-1716, 2019 WL 1766047, at *3 n.2 (3d Cir. Apr. 19, 2019) (declining to address whether a new standard applies to claims raised by pretrial detainees based on issues related to medical care).

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004). Furthermore, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Clark has not stated a claim against any of the Nurse Defendants. He has not raised any allegations at all against Champlin, so he clearly has not provided a basis for a claim against her. As to Harrington, she twice attempted to clean Clark's arms shortly after the incident, but he felt too dizzy to sit up. The Complaint does not plausibly allege that Clark's condition necessitated more immediate medical treatment such that Harrington's actions could be considered deliberate indifference. Rather, Clark disagrees with the Nurse Defendants' decision not to treat him after he refused to cooperate with them. He has not alleged any facts from which one could plausibly infer that his medical needs were regarded with deliberate indifference. Accordingly, the Court will dismiss Clark's claims against the two Nurse Defendants